| UNITED STATES DISTRICT COURT | | SOUTHERN DISTRICT OF TEXAS |
|---|---|---|

Bordelon Marine, Inc., §
§
　　　　Plaintiff, §
§
versus §　　Civil Action H-11-4378
§
Trussco, Inc., §
§
　　　　Defendant. §

## Opinion on Summary Judgment

1. *Introduction.*

An industrial cleaning company says that the indemnity in the master-service agreement between it and an oil company is unenforceable because (a) the contract is not maritime and (b) Louisiana law voids the indemnification. A charter vessel hired by the oil company, says that maritime or Texas law applies, making the indemnity valid. The charter company will prevail.

2. *Background.*

Fairways, an oil and gas company, signed a master-service agreement with the cleaning company, Trussco; it requires that Trussco indemnify Fairways and its subcontractors. It specifies Texas law and a Harris-County forum.

Fairways chartered Bordelon's ship to transport the Trussco crew and equipment and furnish living quarters and work space during the course of Trussco's work.

Eric Gray, a Trussco employee, traveled to Fairways's platform aboard the MV *Wes Bordelon* to empty and clean the mud tanks and transfer the recovered waste to shore. Gray attempted to swing from the ship to the platform by a line. He missed, slid into the water, and was rescued by the crew. Gray says that he was hurt during the rescue and has sued Bordelon in Louisiana state court.

Bordelon requested that Trussco indemnify it as required by the master-service agreement between Trussco and Fairways. Trussco declined. Both parties have moved to resolve whether (a) this venue is proper, (b) the suit is premature, and (c) Louisiana, Texas, or maritime law applies.

3. *Venue.*

Harris County is the proper venue for this case. The agreement specifically selected this forum for all disputes between parties. Trussco negotiated and agreed to be bound to this forum. The text does not limit its application to the signatories – Trussco and Fairways. As a subcontractor, Bordelon is also a party covered by the agreement. Just as car insurance covers third-party drivers without their signatures, so too are Bordelon's claims governed by the master-service agreement.

4. *Premature Claim.*

Bordelon's claims are not premature. The agreement requires Trussco to defend and indemnify Bordelon, regardless of fault. A ruling in Gray's suit will not alter the requirement to pay. Bordelon has requested indemnification for expenses incurred defending itself, and Trussco has refused. The transaction is ripe for a determination of Trussco's duty.

5. *Maritime Law.*

Maritime law governs this dispute, and the indemnification clause is valid. A contract is maritime if its practical context involves traditional or substantial maritime activities. The Outer Continental Shelf Lands Act treats permanent oil platforms as artificial islands and applies the nearest state's law – not admiralty law. The issue is whether Trussco's activities were significantly maritime despite the worker's time spent on the platform.

The ship was an integral part of Trussco's cleaning work. Bordelon carried the Trussco team to and from the platform and furnished living and working quarters while they worked. The ship also carried and housed the storage tanks and equipment used by Trussco to transfer the waste to the ship and to shore.

The ship was not chartered as a ferry or crew boat but as a waste-disposal vessel required in the cleaning operation. Trussco's employees were not passengers. They were crew members working towards a common goal. Modern crews include specialists who further the ship's mission but are not involved in traditional duties of navigation, like scientists on research vessels.[1] This has always been the case with many vessels, the most obvious were whalers.[2]

---

[1] Craig v. MV Peacock, 760 F.2d 953, 956 (9th Cir. 1985).

[2] State v. Merry, 3 Mo. 278, 281–82 (1833).

Working on the platform part of the time does not alter the cleaners' identity as part of the ship's crew. Seamen may go ashore without losing their maritime connection. Nineteenth-century guano harvesters went ashore on islands to collect bird waste to sell on shore without losing their status as seamen.[3] Trussco's actions are parallel. Their berths and mess were aboard the ship. Sleeping one night on the platform and cleaning the mud tanks does not transform the crew into rig hands or traditional shore-bound technicians who live on the platform while working.

Loading a ship and working on a ship to further the ship's mission are traditional maritime activities. Because the job required Trussco's men to work as a part of the crew and perform traditional maritime activities, admiralty law governs this dispute.

Where maritime law applies, the Outer Continental Shelf Lands Act does not. The Louisiana Oilfield Anti-Indemnity Act, applied under OCSLA as the law of the state adjacent to the platform, would void the indemnity provision, but the maritime connections eliminate that law for this dispute.

The agreement's choice of law specifies that maritime law should govern the activities that are offshore or otherwise under admiralty law. Since work was materially at sea, maritime law applies, and Texas law does not.

Under admiralty law, requiring an indemnity is valid.

6.  Conclusion.

Venue in Harris County is proper because both companies are party to the negotiated terms. Because indemnity is required regardless of fault and Bordelon has already incurred costs, the case is not premature. The agreement required Trussco to perform traditional maritime activities. Under admiralty law, the indemnity provision is valid.

Signed on July 18, 2012, at Houston, Texas.

Lynn N. Hughes
United States District Judge

---

[3] The Brookline, 4 F.Cas. 236, 236 (D. Mass. 1845).